## 3046. WILLIAMS et al. v. PEOPLES BANK OF SUMMIT.

1. Where two persons sign a note, apparently as joint principals, and there is nothing in the note to show that one is surety for the other, the presumption of law is that both are liable as joint principals. This is not, however, a conclusive presumption, and may be rebutted by parol evidence, or by circumstances.

2. Where one has signed a note, apparently as principal, but in reality as surety, the burden is on him to establish the fact of suretyship; and where he claims a discharge by some act increasing his risk, he must further show that the payee knew he was surety at the time of the act in question.

3. Whether one signs a note with another as joint principal maker, or as surety merely, is a question to be determined by the facts, and not by the opinion that either party to the contract may entertain. Under the uncontroverted facts in the present case, the defendant was only a surety on the note; usury was charged against the principal maker by

the payee when the note was originally given; the waiver of homestead contained in the note was rendered void by the usury, and, this secret taint of usury increasing the risk of the defendant as surety, the law released him from all liability thereon.

DECIDED SEPTEMBER 23, 1911.

Complaint; from city court of Bainbridge—Judge· Harrell. November 7, 1910.

*Hawes & Pottle,* for plaintiffs in error.

*Donalson & Donalson,* contra.

HILL, C. J. The Peoples Bank of Summit brought suit on a promissory note, against R. A. Williams Jr. and John R. Sharpe as joint principal makers. Williams admitted the execution of the note and liability thereon as principal maker. He alleged further, in his plea, that Sharpe signed the note only as surety. Sharpe filed a defense and set up that he signed the note simply as a surety, that ten per cent. usury had been charged on the note by the bank without his knowledge, that the note contained a waiver of homestead, and that as surety he was discharged on account of the usurious interest so charged, his risk· as surety being increased. The jury rendered a verdict against both defendants as joint principal makers, and Sharpe brings error. His motion for a new trial contains numerous assignments of error, but the view that we entertain on the merits makes a decision on these special assignments of error unnecessary.

The contentions of the defendant Sharpe in the court below were, that he was a surety, that usury had been charged by the bank without his knowledge, and that, as a legal result, in connection with the waiver of homestead by the maker of the note, Williams, his risk had been increased, and he was legally discharged thereon as surety. Two facts are not controverted: (1) that the note contained a waiver of the homestead exemption, and (2) that ten per cent. usury was charged· by the bank when the note was originally made and the money advanced by the bank to Williams. There was no evidence that Sharpe knew that the usury had been charged by the bank, there being nothing on the face of the note to disclose the fact, and Sharpe positively testified that he had no knowledge that usury had been charged by the bank. The only real contention in the case was as to the relation in which Sharpe stood to the note. It was contended by the bank that he was a joint maker. It was insisted by him that he was a surety only. In

support of its contention the bank insisted that on the face of the note both · Williams and Sharpe had signed as joint makers; that there was nothing in the contract itself that indicated that Sharpe was only a surety for Williams, and therefore the presumption of law was that Sharpe was liable as a joint principal with Williams. This is unquestionably the law. *Trammell* v. *Swift Fertilizer Works,* 121 *Ga.* 780 (49 S. E. 731). But it is equally well settled that this presumption is rebuttable and can be disputed by parol evidence, or by circumstances, and the actual relationship of each one who signs his name to the note can be shown. Where one party to a note signs apparently as a principal, and he relies upon the defense of suretyship, the burden, of course, is upon him to show the fact of suretyship. And the burden is also upon him to show the further fact that the payee of the note, the one who advanced money thereon, knew of his relation as surety, or had reason to know that he was such surety when the alleged act incurring the risk was done. 1 Brandt on Suretyship, § 42; Goodman *v.* Litaker, 37 Am. Rep. 602; *Hall* v. *Capital Bank,* 71 *Ga.* 715.

After all, the legal relationship of each party to the note or contract must be determined by the facts. This relation is not determined accurately or conclusively by the mere opinion of the parties to the contract. The fact that the bank thought and had reason to think that Sharpe signed as principal maker of the note did not make him such principal. Although Sharpe himself may have thought that he signed the note as a principal, this did not in law determine his true relationship to the contract. It may be stated that Sharpe testified positively that he signed the note as surety, and Williams, who admitted that he was the principal maker, testified that Sharpe signed as surety, and not as joint maker with him. The cashier of the bank, per contra, testified that when the note was signed by Sharpe he did not know and had no reason to believe that the plaintiff signed other than as principal maker with Williams, and moreover that Williams had told him that Sharpe had an interest in his business and in the consideration for which the note was given. However, there are admitted facts which in our opinion not only show that Sharpe was surety only, but which brought home to the bank knowledge that Sharpe was a surety, irrespective of how he signed. First, the note sued upon was not an original note. It was a renewal note. The original note was given to the bank by

Williams with two other parties as sureties. Sharpe did not sign the original note. He did not know anything about the original transaction of Williams with the bank. He did not receive one cent of the money which Williams borrowed from the bank. He had no interest in the consideration of the note, or in any business of Williams in which the money borrowed by Williams from the bank had been used. When he signed the renewal note he had no interest in the consideration of the original note. Williams got no money from the bank on the renewal note. He simply got an extension of time of payment. Sharpe had no interest in the consideration of this note at any time, either when the original note was made, or when it was renewed. At the request of Williams, Sharpe signed the renewal note in order that Williams might obtain from the bank an extension of payment of the note originally made by Williams and the other sureties. Under these admitted facts, did the mere statement of the cashier that Williams told him that Sharpe was interested in his business have sufficient probative value to overcome these positive, uncontroverted facts, clearly indicating that Sharpe was surety only? Even if Sharpe did have an interest in Williams's business at the time he signed this note, that of itself would not make him a principal maker, nor would it show, or tend to show, that he had any interest in the consideration of the original note. It may be stated, in passing, that Williams denied that he told the cashier that Sharpe had any interest in the note, or in the business for which the note was given. Be this as it may, the cashier unequivocally testified as to the original note of which the present was a renewal: "When I loaned this money I did not know or recognize in this transaction any man on God's green earth except Williams." We do not think, therefore, that under these facts the question as to Sharpe's relationship to this note was an issuable fact. The question of his relationship to the contract must be determined by the facts, as we before stated; and these facts, in our opinion, amount to a legal demonstration that the relation which Sharpe held to this note was simply that of suretyship. These facts bring Sharpe squarely within the definition of a surety. Civil Code (1910), §§ 3538, 3541. He signed the note purely for the accommodation of Williams, to enable the latter to renew his note to the bank, having no interest in the loan and receiving none of the money. *Buck* v. *Bank of the State of Georgia*, 104 *Ga.* 660

(30 S. E. 872).   This being true, and it being admitted that usury was charged by the bank when the loan was made to Williams, and there being no evidence that Sharpe had knowledge of anything tending to show that usury was charged, and as the note contained a waiver of homestead, Sharpe's risk being thereby increased, the note was rendered void and Sharpe was discharged from liability thereon.   We think that under these facts a verdict could properly have been directed in favor of Sharpe.   The judgment refusing a new trial is therefore reversed.   *Lewis* v. *Brown*, 89 *Ga.* 115 (14 S. E. 881).                                        *Judgment reversed.*