1. "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." Code, § 37-607.
2. "An owner of land sold at public auction under a power of sale in a security deed has a right to come into equity whenever it appears that the purchaser made untrue representations whereby other persons were prevented from bidding, and by which the land was obtained at an undervalue." Carr v. Graham, 128 Ga. 622 (57 S.E. 875); Bracewell v. Coleman, 191 Ga. 35
(11 S.E.2d 198); Graham v. Theis, 47 Ga. 479 (3); Williams v. Moore, 68 Ga. 585 (4); Barnes v. Mays, 88 Ga. 696 (16 S.E. 67); Thompson v. Thompson, 157 Ga. 377 (3) (121 S.E. 225).
3. While the petition may not have shown a sufficiently definite agreement for redemption of the property after sale under the power, yet the allegations, that a few days before the sale the defendant assured *Page 822 
petitioner "that he need have no fears respecting the fact of said contemplated sale, and that even if [the property was] sold by him under said power of sale he would not let that interfere with carrying out said agreement," that "petitioner relied on said agreement and did not attend said sale," when except for the defendant's assurance "he would have attended said sale and made said property bring a much greater price," and that "said agreement of defendant was made for the purpose of deterring bidders from said sale in order that defendant might purchase the property without competitive bids and retain the same at a considerable profit to himself, and had that effect," when considered with other averments tending to show intention to mislead the plaintiff and obtain the land at an undervalue, were sufficient to bring the case within the principle quoted in the preceding note, and, in connection with the tender alleged, to state a cause of action for annulling the sale, as against a mere general demurrer. The plaintiff pleaded the agreement merely for the purpose of showing that the power of sale was not fairly exercised, and of having the sale annulled, and did not seek specific performance, as was done in Dowling v. Doyle, 149 Ga. 727
(102 S.E. 27), and Broadwell v. Smith, 152 Ga. 161
(108 S.E. 609). Nor did either of these cases involve the question of bad faith.
4. There was no merit in other attacks upon the sale made by the defendant under the power of sale.
5. Under the ruling stated above, the judge erred in dismissing the petition on general demurrer.
Judgment reversed. All the Justices concur, except Duckworth, J., who dissents.
 No. 14430. APRIL 15, 1943. ADHERED TO ON REHEARING, MAY 8, 1943.
William H. Holbrook filed a suit in the superior court of DeKalb County against J. W. Dickson, praying, among other things, that a "pretended sale" of a described tract of land, as made by the defendant under a power of sale in a security deed previously executed by the plaintiff to the defendant, be declared a nullity, that the deed made in pursuance of such sale be canceled, and that the defendant be enjoined from further prosecuting a dispossessory warrant which he had caused to be issued against the plaintiff. The validity of the sale as made under the power of sale was challenged on various grounds, and there were allegations with reference to tender. The defendant demurred on the grounds, among others, that "said petition does not set out any cause of action against this defendant," and "does not allege any facts which would authorize this court to grant the prayers therein." The court sustained these two grounds without passing upon others, but allowed the plaintiff fifteen days within which to amend; and further ordered *Page 823 
that unless the petition be amended in stated particulars within this period, it would "stand dismissed." The plaintiff declined to amend, and after expiration of the time for amendment he sued out a writ of error complaining of the judgment on demurrer.
The following facts appeared from exhibits: On July 1, 1939, the plaintiff executed to the defendant a deed conveying a described tract of land in DeKalb County, to secure a note of even date for the sum of $5347, and further described in the deed as follows: "One note reducible at the rate of $35 per month for 240 months, the last being the 241st payment of $47. This note bearing six per cent. interest to be calculated for each month interest, and the balance applied as part of principal."
The deed contained power of sale as follows: "In case this debt is not paid promptly when due, I authorize said second party, his successors or assigns, at option to sell said described property at public outcry before the court-house door in DeKalb County, Georgia, to the highest bidder for cash, to pay said debt, with interest thereon and expenses of the proceedings, including ten per cent. attorney's fees if the claim be placed in the hands of an attorney for collection, after advertising the time, place, and terms of sale in the newspaper wherein the sheriff's sales are advertised in said county, once a week for four weeks. And said second party, its successors or assigns, may make to the purchaser title in fee simple to the same; and I hereby appoint the said party of the second part, his representatives or assigns, as my attorney in fact to execute deed to said property for me and in my name in accordance with any sale held hereunder; and said second party or assigns are hereby authorized to bid and to buy at said public sale. The proceeds of said sale are to be applied first to payment of said debt and interest and expenses of this proceeding; the remainder, if any, paid to said first party; and first party agreeing to surrender possession of said property without let or hindrance of any kind."
The note provided for the same monthly payments as were stated in the deed, beginning on or before August 1, 1939, and continuing for 241 months. The note also contained an accelerating clause and expressly referred to the loan deed, but the deed itself did not contain such clause. The deed provided for the payment of ten per cent. of principal and interest as attorney's fees. *Page 824 
The advertised "notice of sale under power" was as follows:
"Georgia, DeKalb County. Under and by virtue of the power of sale contained in a loan deed from W. H. Holbrook to J. W. Dickson, dated July 1, 1939, and recorded in deed book 498, page 220, records of DeKalb County, Georgia, the said J. W. Dickson as attorney in fact for the said W. H. Holbrook will sell to the highest bidder for cash before the court-house door in the City of Decatur, on the first Tuesday in March, 1942, within the legal hours of sale, the following property, to wit [describing the property as in the security deed]. The said W. H. Holbrook having defaulted in the payments provided in said deed, and the said J. W. Dickson having elected to declare the total indebtedness due and collectible as provided in the note secured by said deed, the said property will be sold in accordance with the provisions of said deed, and the proceeds applied as therein provided." The notice was signed, "J. W. Dickson, attorney in fact for W. H. Holbrook."
The petition alleged: At the time the plaintiff purchased the property from Robert W. Parris in 1938, there was pending certain litigation regarding a claimed building restriction which prevented the plaintiff from obtaining an FHA loan as he had expected to do, and it was because of this fact that the plaintiff obtained the loan from the defendant, Dickson, who had an interest in the property.
"9. Because of the inability of petitioner to obtain a disposition of said litigation until October, 1941, as aforesaid, he kept the said Dickson informed of the situation, and was encouraged by said Dickson to proceed with his efforts to remove said cloud upon said title. In the meantime said Dickson assured petitioner that when the same could be removed he would co-operate with petitioner in refinancing said property, and, if necessary, would postpone a part of his claim and allow a first loan placed thereon, the proceeds of which, amounting to approximately $5000, would be applied toward payment of said Dickson's claim. Said Dickson also expressed a willingness to accept security against other property for such excess over the proceeds of said first loan." Later in October, 1941, the plaintiff received notice from Decatur Building Loan Association "that said property had been approved for a loan of $5250."
"12. About the 20 day of April, 1942, petitioner discovered *Page 825 
that defendant was advertising said property for sale, as aforesaid, and immediately went to him and advised him of the approval of said loan by Decatur Building Loan Association, and of petitioner's ability to carry out his agreement and understanding with said defendant, and of petitioner's ability to supplement said loan, and to furnish additional security, which could be done as soon as said loan association could approve the title, and that said approval was expected any day, and that petitioner would thereby be in readiness and willing to complete said loan, and either pay or pay and secure defendant for all his just claims. The defendant then and there assured this petitioner that he need have no fears respecting the fact of said contemplated sale, and that even if the same [was] sold by him under said power of sale he would not let that interfere with carrying out said agreement."
Defendant proceeded to conduct said sale on the first Tuesday in May, 1942, and on said date (May 5, 1942) executed a deed to himself and filed the same for record on May 7, 1942. Said deed recites that said land was sold for a consideration of $5000. On the day following the making of said deed the defendant went to the Decatur Building Loan Association and advised it that petitioner herein would be unable to refinance said property, and that they should not do anything further with reference to said loan. Said statement to Decatur Building Loan Association was contrary to fact, was made in ignorance of this petitioner, was fraudulent, and without this petitioner's authority, and was done for the purpose of obstructing this petitioner in his efforts to protect his rights and to save his said property. From the very beginning, it has been the purpose of said Dickson to deprive this petitioner of his rights and interests in said property. From the very beginning, was ostensibly co-operating with this petitioner and encouraging him to remove the cloud from said title, he was doing so only with the ulterior motive of fastening the expense thereof on this petitioner and ultimately obtaining the benefit thereof for his own personal gain. All of said efforts on the part of this petitioner were at great expense to petitioner.
Decatur Building Loan Association did examine the title to said property under date of May 4, 1942, and reported nothing as an encumbrance which this petitioner was unable to remove, provided the defendant carried out his said agreement. The result *Page 826 
of this examination became known to petitioner on or about May 6, 1942, and he promptly communicated with defendant and offered to proceed with the carrying out of said agreement. However, the defendant then and there stated that he claimed some $600 attorney's fees due him under said foreclosure, which claim said defendant had never made before; and further, defendant stated that "Mr. Walker" of the Fulton National Bank, did not think that this petitioner could ever redeem the property; and that as the said bank insisted upon its money, he would have to keep the property himself, and demanded that petitioner vacate.
On September 17, 1942, petitioner tendered to defendant in actual cash the full amount due on said note for which said security deed is held, together with any cost of court, cost of advertising, or insurance premium that might be due him, which tender was not accepted by defendant. On the following day petitioner again offered to pay said note in full, together with any other legitimate item of expense that might be due defendant in connection with said obligation, and defendant refused both of said offers and tenders. Petitioner stood ready, able, and willing to pay off and discharge the same, and now stands ready, able, and willing to pay the same, and continues said tender.
"21. Petitioner shows that said purported sale under power of attorney is void and of no effect, and should be canceled, and expunged from the records, for the following reasons:
"A. Said sale was not fairly held, and said power of sale was not fairly exercised, for the reason that said property had a reasonable market value at the time of said sale of $9000, and the sum of $5000, which defendant claims was the highest and best bid therefor, was a sacrifice of petitioner's equity of $4000, if said sale is allowed to become final and binding. If petitioner had not been informed by defendant prior to said sale as aforesaid that the sale would be nothing more than a formality which would in no way conflict with petitioner's rights to carry out his plan of refinancing as above set out, he would have attended said sale and made said property bring a much greater price than $5000. Petitioner relied on said agreement, and did not attend said sale. In addition, the People's Bank of Atlanta had a second loan deed on said property, and were unwilling to allow said property sold for $5000, but their attorney had been informed of said agreement and did not *Page 827 
attend the sale, relying upon said agreement as communicated to him. Said agreement of defendant was made for the purpose of deterring bidders from said sale, in order that defendant might purchase the property without competitive bids and retain the same at a considerable profit to himself, and had that effect.
"B. Under the facts and circumstances, defendant holds said title as trustee, if he holds title at all other than as security for his debt. But petitioner avers that defendant holds no other title than as security for his debt."
C. The published notice declared that petitioner had defaulted in payment as provided in said deed, and that the property would be sold in accordance with the provisions of said deed and the proceeds applied as therein provided, whereas the deed itself did not contain the accelerating clause, and did not show that the debt was due, or afford any key to a disclosure of the facts respecting the maturity of the debt, and any person interested in buying, being unable to determine from the record whether the debt was due or not, would refrain from bidding.
D. The power of sale was not fairly exercised, for the reason that at the time there was pending in the city court of Decatur a suit on the note, being the case of J. W. Dickson v. William H. Holbrook, filed on July 1, 1941, in which suit the defendant had filed an answer asserting various defenses; copies of the petition and the answer in that case being attached as exhibits to the instant petition.
E. The defendant had no right to collect attorney's fees as he attempted to do in exercise of the power of sale, nor, for reasons alleged, was the plaintiff in the suit in the city court entitled to recover attorney's fees.
F. The advertisement was insufficient, because it specified the place of sale as "before the court-house door in the City of Decatur," which would tend to identify the place as the court-room of the City of Decatur, located in the city hall, which is a different place from the court-house door of DeKalb County.
G. The advertisement did not state that the defendant was the holder of said note and deed, and did not disclose where the holder was located or where the note and deed could be found, in order that sufficient information other than as disclosed by the record with respect to the defendant's right to proceed with the foreclosure could be had. *Page 828 
H. The advertisement did not specify the amount of the debt.
J. The defendant had so acted with reference to said debt, as above stated, as to require him in good faith to have given reasonable notice of his intention to advertise and sell said property.
K. The advertisement in describing the land stated one of the dimensions as 315 feet, which was in reality 365 feet. [The description was the same as in the security deed.]
L. If the statement made by the defendant following the sale was true, the Fulton National Bank of Atlanta owned said note and loan deed at the time the same was foreclosed, and the said Dickson had no right to foreclose the same.
The judge's order on the demurrer was as follows: "Upon consideration of the general demurrers of defendant to the plaintiff's petition, contained in paragraphs 2 and 3 of said demurrer, which was filed October 10, 1942, it is considered, ordered, and adjudged that said paragraphs 2 and 3 of said demurrer be and the same are hereby sustained, with leave to amend as hereinafter provided within 15 days from this date. I am of the opinion that under the decisions in 149 Ga. page 727, and 152 Ga. 161, the alleged agreement between plaintiff and defendant, referred to in paragraphs 9 and 12 of the petition, is not sufficiently definite and certain as to terms and conditions. Unless said petition is amended within 15 days from this date, so as to set up more definitely the terms and conditions of said alleged agreement, said petition will stand dismissed. The special demurrers and other grounds of general demurrer are not passed upon at this time."